CADES SCHUTTE LLP

MILTON M. YASUNAGA    3058
MARTIN E. HSIA              2954
1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4216
Telephone: (808) 521-9200
E-mail: myasunaga@cades.com

Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and
HAWAII INTERNATIONAL SEAFOOD, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ASIANA MANAGEMENT GROUP, INC. (doing business as ACE SUSHI), <br><br> Defendant. | CIVIL NO. 04-00080 JMS-LEK <br><br> FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; EXHIBITS A-E; SUMMONS; CERTIFICATE OF SERVICE |

FIRST AMENDED COMPLAINT
================================

Plaintiffs WILLIAM R. KOWALSKI (Kowalski) and HAWAII

INTERNATIONAL SEAFOOD, INC. (Hawaii International), on personal

ImanageDB:652605.1

knowledge as to their own activities and on information and belief as to the activities of others, hereby allege as follows:

1. This court has jurisdiction over the subject matter of this action pursuant to: (A) 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331, in that this action includes a claim for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, et seq., and a claim for unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (B) 28 U.S.C. § 1338(b), in that this action asserts claims of unfair competition that are joined with a substantial and related claim under the patent laws; and (C) 28 U.S.C. § 1367(a), in that any other claims are related to the claims for patent infringement and unfair competition are therefore proper under this court's supplemental jurisdiction.

2. Venue for this action is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) and there is jurisdiction over Defendant ASIANA MANAGEMENT GROUP, INC. (doing business as ACE SUSHI) ("ACE SUSHI") because ACE SUSHI has committed acts of infringement and other actionable acts in this judicial district.

## COUNT ONE

### (Patent Infringement of the '401 Patent – 35 U.S.C. § 271

3. The allegations of paragraphs 1 through 2 above are realleged and incorporated by reference.

4. On October 26, 1999, the United States Patent and Trademark Office issued United States Patent No. 5,972,401 (the '401 Patent) to Mr. Kowalski. (Exhibit A is a copy of the '401 Patent.) At all relevant times, Mr. Kowalski has been the owner of the '401 Patent.

5. The Kowalski '401 Patent broadly covers the treatment of food with smoke from which sufficient taste causing components have been removed so that the treated food does not end up with (or retain) taste imparted from the smoke – thus, such smoke is commonly described as tasteless smoke. (See, for example, claims 67, 50, 49, and 1 of the '401 Patent, which appear at Columns numbered 28, 26, and 22 on the last 4 pages of Exhibit A.  These claims do not mention [and are therefore not limited to] any particular equipment, method for removing taste from the smoke, names, etc.  See also, for example, the section of the Patent titled "Summary Of The Invention", at lines 25-30 of column "12", which states, "Smoke can be superpurified by any method, or combination of methods ….")

6. As the '401 Patent explains, the benefits of Mr. Kowalski's patented process include the following: Untreated fish or other meat turns brown after freezing and thawing, which renders the meat unsuitable for use raw as sashimi or on sushi, and much less desirable even when sold as steaks for cooking. In contrast, meat treated with tasteless smoke retains its natural red color through freezing and thawing and, because the meat does not have any smoke taste, the

meat is suitable for the many uses in which taste from smoke is not desired. (Ex. A at Columns 1 and 2.)

7. Under the Process Patent Amendments Act of 1988, infringement liability is not limited only to those who use the process, but also extends to those who import or sell the product that was made with the process. Thus, 35 U.S.C. Section 271(g) provides "(g) Whoever without authority imports into the United States or sells or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer …."

8. Under 35 U.S.C. § 282, the '401 Patent is presumed valid.

9. At times after October 26, 1999, ACE SUSHI has, without authorization from Mr. Kowalski, imported, offered to sell, or sold fish processed with tasteless smoke, and may be continuing to do so.

10. ACE SUSHI's fish is processed for color retention and then frozen outside the United States (and not in Japan), shipped to the United States while frozen, then thawed in the United States. Plaintiffs have good cause to believe that ACE SUSHI is infringing because (a) Plaintiffs have seen that ACE SUSHI's fish is frozen then thawed, and that the tuna does not turn brown as would be the case if the tuna was not processed for color retention, but retains its red color after freezing and thawing in the manner characteristic and indicative of the process covered by the '401 Patent and (b) ACE SUSHI has admitted to being supplied by

suppliers that have represented their products as being processed with smoke for color retention but as having no smoke taste or odor.

11. At times after October 26, 1999, ACE SUSHI, without authorization from Mr. Kowalski, imported, offered to sell, or sold products or food made by the process covered by the '401 Patent, and is believed to be continuing to do so.

12. ACE SUSHI infringed and may be continuing to infringe the '401 Patent, directly, contributorily, and/or by inducement, in violation of 35 U.S.C. § 271.

13. Mr. Kowalski has owned Hawaii International from before the patent issued. Mr. Kowalski has licensed certain entities to import into or offer to sell, sell, or otherwise dispose of in the United States products made with the process covered by the '401 Patent, but ACE SUSHI has purchased tasteless smoke treated fish from at least one supplier that has not been licensed by Mr. Kowalski.

14. Since the time the '401 Patent issued, Mr. Kowalski and his company Hawaii International have caused notice of the '401 Patent to be placed on the frozen seafood made with Kowalski's patented process and imported and sold by Hawaii International.

15. ACE SUSHI has had notice of its infringement called for by 35 U.S.C. § 287(b)(5).

16. Under 35 U.S.C. § 295, Plaintiffs are entitled to the statutory

presumption that the product was made with the patented process.

17. As a result of ACE SUSHI's infringement of the '401 Patent, Plaintiffs have been and continue to be injured in their business and property rights, and are entitled to recover damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

18. On information and belief, ACE SUSHI's infringement of the '401 Patent has been and continues to be deliberate and willful, thereby rendering this an exceptional case pursuant to 35 U.S.C. §§ 284 and 285, and entitling Plaintiffs to treble damages and reimbursement of their attorneys' fees.

19. On information and belief, unless enjoined by this Court, ACE SUSHI will continue to infringe the '401 Patent, and Plaintiffs will suffer irreparable harm for which there is no adequate remedy at law. Accordingly, Plaintiffs are entitled to preliminary and/or permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

COUNT TWO
(A. Fraud;
B. Fraudulent, Malicious, Willful, Knowing, and/or Intentional Use of False or Misleading Description or Representation of Fact Which Misrepresents the Nature, Characteristics, Qualities, or Geographic Origin of Goods;
C. Fraudulent, Malicious, Willful, Knowing, and/or Intentional Unfair Competition and Unfair or Deceptive Acts or Practices in the conduct of Trade or Commerce; or
D. Fraudulent, Malicious, Willful, Knowing, and/or Intentional Deceptive Trade Practices)

20. The allegations of paragraphs 1 through 19 above are realleged and incorporated by reference.

21. **ACE SUSHI falsely, misleadingly, and deceptively gave and still gives customers and government inspectors the impression and understanding that ACE SUSHI's fish is fresh, natural, untreated, contains no chemical additives, and is from Japan, when in truth ACE SUSHI's fish is actually frozen, treated with chemical carbon monoxide gas to artificially exaggerate its color and quality, contains chemical carbon monoxide gas as an ingredient, and is not from Japan.** ACE SUSHI's false, misleading, and deceptive conduct was done fraudulently, maliciously, willfully, knowingly, and/or intentionally and occurred over several years through affirmatively misleading, incorrect, and untrue advertisements, promotions, labeling, signage, and other representations.

22. On September 3, 1998, Richard V. Cano, Deputy Director of the Seafood Inspection Program of the U.S. Department of Commerce's National Oceanic and Atmospheric Administration ("NOAA") issued a directive (Exhibit B) explaining (a) how the U.S. government did not allow the use of chemical carbon monoxide gas and would not "lot inspect" (i.e., place governmental approval marks or certifications on ) such product treated with chemical carbon monoxide gas because chemical carbon monoxide gas artificially enhances the color of fish to make it a brighter red than it was before it was treated and frozen, and chemical

carbon monoxide gas also unnaturally fixes that artificially intense color so the fish after thawing stays bright red even when the fish becomes spoiled, thereby making the fish appear in better condition or of greater value than it actually is, but (b) in contrast, the government approved tasteless smoke and would inspect and certify products made with it because it does not enhance the natural color of the fish but merely keeps it from getting brown when frozen, and tasteless smoked treated fish's natural red color degrades normally over a few days after the frozen fish is thawed, so the consumer can tell from the color when the fish is no longer good:

> The purpose of this Memorandum is to clarify the position of the NOAA Seafood Inspection Program (NSIP) relative to the inspection of products that have been subjected to a process involving carbon monoxide (CO) gas.
>
> During the past few years, there has been an apparent increase in the practice of applying CO to tuna products such as steaks or sashimi cuts to enhance the color of the product. The U.S. Food and Drug Administration [FDA] considers such product which has been subjected to such a process to be adulterated … in that damage or inferiority has been concealed and/or that a substance has been added to make it appear better or of greater value than it is. It has been the policy of the NOAA Seafood Inspection Program not to lot inspect, apply marks, or certify such product.
>
> In 1997, NOAA became aware of a process which employed what the company termed "tasteless smoke". The purpose of its application was to retard the development of the brown color that rapidly occurs in tuna flesh after it has been cut…. Unlike other processes that result in the color of the product being enhanced or brightened and fixed though the use of higher concentrations of CO, this [tasteless smoke] process did not enhance the natural color and the color of the flesh degraded over time. At the request of the importer, Hawaii International Seafood, Inc. (HIS), NOAA performed verification inspections in overseas plants that were using the "tasteless smoke" process. Subsequent to these verification audits, HIS provided data to the FDA through correspondence and meetings to support the

acceptability of its process. This resulted in the following policy statement which I distributed by E-mail on October 7, 1997:

> Based on the outcome of a meeting that was recently held between representatives of Hawaii International Seafood, Inc. and the FDA Office of Seafood (OS), as well as my subsequent conversations with Mr. Phillip Spiller and Dr. Anthony Brunetti of the FDA-OS, we will re-institute offering inspection services for product that has been treated with "tasteless smoke".

It has come to our attention that considerable amounts of frozen tuna … are being imported from sources that utilize CO to enhance and fix the color of the flesh…. Many firms are using statements such as "tasteless smoke" which was first coined by Hawaii International as part of their [Hawaii International's] accepted method, but has been "borrowed" by others that have not followed the same acceptance procedure.

23.     Furthermore, on August 14, 1997, the U.S. government stated "Carbon monoxide is neither generally recognized as safe (GRAS) as a food ingredient, nor has it been shown to be safe for use either as a food or color additive …. Moreover, the use of CO obviously enhances the natural red color of tuna flesh, potentially causing consumers to be misled about the true nature or value of the tuna. Therefore, … the use of CO results in economic adulteration … because it makes the tuna 'appear better or of greater value than it is.'" (An accurate copy of this letter is attached as Exhibit C, and see Exhibit D, an accurate copy, with highlighting added, of the government's follow up letter of December 9, 1997, clarifying that the conclusions in its August 14, 1997 letter were about chemical carbon monoxide gas and not tasteless smoke.)

24.  In contrast to chemical carbon monoxide gas, the U.S. government concluded "There is no evidence to suggest that 'tasteless smoke' poses a health risk to the consumer from the ingestion of treated product.... Hawaii International has provided data to support their view that 'tasteless smoke' is GRAS [Generally Recognized As Safe] by submitting a GRAS notification document to FDA's Office of Premarket Approval.  On March 10, 2000, FDA has responded that the agency has no questions at this time regarding the conclusion of Hawaii International that tasteless smoke is GRAS .... NOAA has implemented a policy … to inspect and certify only tuna products treated with 'tasteless smoke,'" (a copy of this letter, with highlighting added, is attached as Exhibit E).

25.  Moreover, in contrast to chemical carbon monoxide gas, the use of smoke to safely treat and preserve foods dates back thousands of years. Consumers, through long experience, have learned that smoke treatment is a safe means of treating foods and have become comfortable with purchasing and eating smoked foods, including smoked ham, sausage, and salmon and other fish.  Given the above factors, many consumers and other customers were willing to buy smoked fish (including tasteless smoked fish where smoke taste was not desired) but not fish known to be treated instead with chemical carbon monoxide gas. (In fact, that ACE SUSHI knew of consumers' acceptance of smoked foods as natural while ACE SUSHI at the same time did not want consumers to know its fish was

treated with chemical carbon monoxide is confirmed by the fact, e.g., that ACE SUSHI'S ingredient labels prominently state that its salmon is "Smoked" and contains "Natural Smoke", mention many other ingredients including "Natural Brown Sugar", but ACE SUSHI'S ingredient labels at the same time misleadingly hide the fact that its tuna and other fish are treated with chemical carbon monoxide gas.)

26. ACE SUSHI has, in the course of commercial advertising or promotion, fraudulently, maliciously, willfully, knowingly, and/or intentionally used false, misleading, fraudulent, and deceptive descriptions of fact and false, misleading, fraudulent, and deceptive representations of fact (a) which misrepresented the nature, characteristics, qualities, and geographic origin of ACE SUSHI's goods and commercial activities, and (b) which are likely to cause confusion and which did cause confusion as to the origin, sponsorship, or approval of ACE SUSHI's goods, and (c) which constitute passing off.

27. ACE SUSHI has fraudulently, maliciously, willfully, knowingly, and/or intentionally engaged and is engaging in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce; ACE SUSHI has made and is making deceptive representations or designations of geographic origin in connection with its goods; represents that goods have characteristics or ingredients that they do not have; represents that goods are of a

particular standard, quality, or grade, or that goods are of a particular style, when they are of another; engages in other conduct which creates a likelihood of confusion or of misunderstanding.

28.  The above actions were done fraudulently, maliciously, willfully, knowingly, and/or intentionally.

29.  ACE SUSHI's conduct constitutes fraudulent, malicious, willful, knowing, and/or intentional use of false or misleading description or representation of fact which misrepresents the nature, characteristics, qualities, or geographic origin of goods; unfair competition; unfair or deceptive acts or practices in the conduct of any trade or commerce; deceptive trade practices; fraud; and other wrongful conduct under 15 U.S.C. §1125(a)(1) (which is Section 43(a)(1) of the Lanham Act), Haw. Rev. Stat. Sections 480-2, 480-13, 481A-3, etc., and the common law.

30.  ACE SUSHI's conduct provided ACE SUSHI with substantial profits to which it was not entitled and caused Plaintiffs to suffer substantial lost sales, damages and other injury and Plaintiffs are reasonably likely to suffer further injury, and are entitled to damages, lost profits from lost sales, treble damages, punitive damages, statutory damages, and/or ACE SUSHI's profits. ACE SUSHI's conduct is causing Plaintiffs irreparable harm and entitles them to injunctive relief.

WHEREFORE, Plaintiffs request entry of judgment in their favor and

against ACE SUSHI as follows:

    A. Declaring the '401 Patent valid and enforceable, and that ACE SUSHI has infringed one or more claims of that patent;

    B. Preliminarily and permanently enjoining ACE SUSHI and its agents, representatives, employees, servants, officers, directors, shareholders, attorneys, affiliates, trustees, successors, assigns, and any others within its control or supervision, and all persons acting in active concert or participation with it, from further infringing, contributing to and/or inducing the infringement of the '401 Patent, in accordance with 35 U.S.C. § 283, or assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to above;

    C. Awarding Mr. Kowalski damages in an amount adequate to compensate him for ACE SUSHI's patent infringement, in accordance with 35 U.S.C. § 284, including pre-judgment interest;

    D. Increasing the damages to three times the amount found or assessed by virtue of the deliberate and willful nature of ACE SUSHI's patent infringement, in accordance with 35 U.S.C. § 284;

    E. Awarding Plaintiffs ACE SUSHI's profits, Plaintiffs' damages, Plaintiffs' lost profits from lost sales, treble damages, statutory damages, and/or punitive damages, and prejudgment interest for harm caused by ACE SUSHI's

unfair competition; unfair or deceptive acts or practices in the conduct of any trade or commerce, deceptive trade practices; fraud; false, misleading, fraudulent, and deceptive descriptions of fact and false, misleading, fraudulent, and deceptive representations of fact which misrepresented the nature, characteristics, and qualities of ACE SUSHI's goods; and other conduct described above.

     F. Preliminarily and permanently enjoining ACE SUSHI, its agents, representatives, employees, servants, officers, directors, shareholders, attorneys, affiliates, trustees, successors, assigns, and any others within its control or supervision, and all persons acting in active concert or participation with it, from further unfairly competing/using deceptive trade practices, mislabeling and misrepresenting ACE SUSHI's frozen chemical carbon monoxide treated products not from Japan as being fresh and untreated and from Japan or treated with "tasteless smoke" or using other false or misleading words, representations, or impressions, or engaging in or performing any of the other wrongful activities referred to above, or assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to above;

     G. Awarding Plaintiffs their costs, reasonable attorneys' fees, and granting such other and further relief as this Court deems just and proper.

DATED: Honolulu, Hawaii, May 26, 2006.

CADES SCHUTTE LLP

/s/ Milton M. Yasunaga
MILTON M. YASUNAGA
MARTIN E. HSIA
Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and HAWAII
INTERNATIONAL SEAFOOD, INC.