CADES SCHUTTE LLP

MILTON M. YASUNAGA    3058-0
1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4216
Telephone: (808) 521-9200
E-mail: myasunaga@cades.com

Attorneys for Plaintiffs
WILLIAM R. KOWALSKI and
HAWAII INTERNATIONAL SEAFOOD, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ASIANA MANAGEMENT GROUP, INC. (doing business as ACE SUSHI),<br><br>Defendant. | CIVIL NO. 04-00080 JMS-LEK<br><br>PLAINTIFFS' SCHEDULING CONFERENCE STATEMENT; CERTIFICATE OF SERVICE<br><br>Date:    June 5, 2006<br>Time:    9:00 a.m.<br>Magistrate Judge: Leslie E. Kobayashi |

PLAINTIFFS' SCHEDULING CONFERENCE STATEMENT

Pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Rule 16.2(b) of the Rules of the United States District Court for the District of Hawaii,

Plaintiffs WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., hereby submit the following Scheduling Conference Statement.

## I. NATURE OF THE CASE

This is an action involving claims of patent infringement, mislabeling/misrepresentation, unfair competition/Lanham Act violations, etc.

On October 26, 1999, Plaintiff Kowalski, an individual who resides in Hawaii, was issued United States Patent No. 5,972,401 ("Patent" or "Kowalski Patent"). The Patent broadly covers the treatment of food with smoke from which taste causing components have been reduced so as to render the smoke tasteless – that is, so that the smoke does not impart smoke taste to food. Although some of the Patent's seventy three claims are narrow and specific, others are broad (e.g., claims 1, 50, or 67 at columns 22, 26, and 28 of Plaintiff's Patent), and because infringement occurs if even one claim is applicable to the infringer, the Patent is not restricted to the use of any particular equipment or terminology or method of taste component reduction. The utility of Plaintiff's invention includes the following: Untreated fish or other meat turns brown after freezing and thawing, which renders the meat unsuitable for use raw as sashimi or poke or on sushi, and much less desirable even when sold as steaks for cooking. In contrast, meat treated with tasteless smoke retains its natural color through freezing and thawing and, because the smoke does not impart a taste, the meat is suitable for the many uses in

which a smoke taste is not desired.

Under the Process Patent Amendments Act of 1988, infringement liability is not limited only to those who use the process, but also extends to those who import or sell the product that was made with the process. Thus, 35 U.S.C. Section 271(g) provides "(g) Whoever without authority imports into the United States or sells or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer ...."

ASIANA MANAGEMENT GROUP, INC. ("ACE SUSHI") has infringed and may be continuing to infringe the '401 Patent, directly, contributorily, and/or by inducement, in violation of 35 U.S.C. § 271. ACE SUSHI has over 600 outlets across the country.

**ACE SUSHI also falsely, misleadingly, and deceptively gave and still gives customers and government inspectors the impression and understanding that ACE SUSHI's fish is fresh, natural, untreated, contains no chemical additives, and is from Japan, when in truth ACE SUSHI's fish is actually frozen, treated with chemical carbon monoxide gas to artificially exaggerate its color and quality, contains chemical carbon monoxide gas as an ingredient, and is not from Japan.** ACE SUSHI's false, misleading, and deceptive conduct was done fraudulently, maliciously, willfully, knowingly, and/or intentionally and occurred over several years through affirmatively misleading, incorrect, and untrue

advertisements, promotions, labeling, signage, and other representations.

On September 3, 1998, Richard V. Cano, Deputy Director of the Seafood Inspection Program of the U.S. Department of Commerce's National Oceanic and Atmospheric Administration ("NOAA") issued a directive (Exhibit C) explaining (a) how the U.S. government did not allow the use of chemical carbon monoxide gas and would not "lot inspect" (i.e., place governmental approval marks or certifications on ) such product treated with chemical carbon monoxide gas because chemical carbon monoxide gas artificially enhances the color of fish to make it a brighter red than it was before it was treated and frozen, and chemical carbon monoxide gas also unnaturally fixes that artificially intense color so the fish after thawing stays bright red even when the fish becomes spoiled, thereby making the fish appear in better condition or of greater value than it actually is, but (b) in contrast, the government approved tasteless smoke and would inspect and certify products made with it because it does not enhance the natural color of the fish but merely keeps it from getting brown when frozen, and tasteless smoked treated fish's natural red color degrades normally over a few days after the frozen fish is thawed, so the consumer can tell from the color when the fish is no longer good:

> The purpose of this Memorandum is to clarify the position of the NOAA Seafood Inspection Program (NSIP) relative to the inspection of products that have been subjected to a process involving carbon monoxide (CO) gas.

During the past few years, there has been an apparent increase in the practice of applying CO to tuna products such as steaks or sashimi cuts to enhance the color of the product. The U.S. Food and Drug Administration [FDA] considers such product which has been subjected to such a process to be adulterated … in that damage or inferiority has been concealed and/or that a substance has been added to make it appear better or of greater value than it is. It has been the policy of the NOAA Seafood Inspection Program not to lot inspect, apply marks, or certify such product.

In 1997, NOAA became aware of a process which employed what the company termed "tasteless smoke". The purpose of its application was to retard the development of the brown color that rapidly occurs in tuna flesh after it has been cut.… Unlike other processes that result in the color of the product being enhanced or brightened and fixed though the use of higher concentrations of CO, this [tasteless smoke] process did not enhance the natural color and the color of the flesh degraded over time. At the request of the importer, Hawaii International Seafood, Inc. (HIS), NOAA performed verification inspections in overseas plants that were using the "tasteless smoke" process. Subsequent to these verification audits, HIS provided data to the FDA through correspondence and meetings to support the acceptability of its process. This resulted in the following policy statement which I distributed by E-mail on October 7, 1997:

> Based on the outcome of a meeting that was recently held between representatives of Hawaii International Seafood, Inc. and the FDA Office of Seafood (OS), as well as my subsequent conversations with Mr. Phillip Spiller and Dr. Anthony Brunetti of the FDA-OS, we will re-institute offering inspection services for product that has been treated with "tasteless smoke".

It has come to our attention that considerable amounts of frozen tuna … are being imported from sources that utilize CO to enhance and fix the color of the flesh.… Many firms are using statements such as "tasteless smoke" which was first coined by Hawaii International as part of their [Hawaii International's] accepted method, but has been "borrowed" by others that have not followed the same acceptance procedure.

Furthermore, on August 14, 1997, the U.S. government stated "Carbon

monoxide is neither generally recognized as safe (GRAS) as a food ingredient, nor

has it been shown to be safe for use either as a food or color additive ....
Moreover, the use of CO obviously enhances the natural red color of tuna flesh,
potentially causing consumers to be misled about the true nature or value of the
tuna. Therefore, ... the use of CO results in economic adulteration ... because it
makes the tuna 'appear better or of greater value than it is.'" (An accurate copy of
this letter is attached as Exhibit D, and see Exhibit E, an accurate copy, with
highlighting added, of the government's follow up letter of December 9, 1997,
clarifying that the conclusions in its August 14, 1997 letter were about chemical
carbon monoxide gas and not tasteless smoke.)

In contrast to chemical carbon monoxide gas, the U.S. government concluded "There is no evidence to suggest that 'tasteless smoke' poses a health risk to the consumer from the ingestion of treated product.... Hawaii International has provided data to support their view that 'tasteless smoke' is GRAS [Generally Recognized As Safe] by submitting a GRAS notification document to FDA's Office of Premarket Approval. On March 10, 2000, FDA has responded that the agency has no questions at this time regarding the conclusion of Hawaii International that tasteless smoke is GRAS .... NOAA has implemented a policy ... to inspect and certify only tuna products treated with 'tasteless smoke,'" (a copy of this letter, with highlighting added, is attached as Exhibit F).

Moreover, in contrast to chemical carbon monoxide gas, the use of smoke to

safely treat and preserve foods dates back thousands of years. Consumers, through long experience, have learned that smoke treatment is a safe means of treating foods and have become comfortable with purchasing and eating smoked foods, including smoked ham, sausage, and salmon and other fish. Given the above factors, many consumers and other customers were willing to buy smoked fish (including tasteless smoked fish where smoke taste was not desired) but not fish known to be treated instead with chemical carbon monoxide gas. (In fact, that ACE SUSHI knew of consumers' acceptance of smoked foods as natural while ACE SUSHI at the same time did not want consumers to know its fish was treated with chemical carbon monoxide is confirmed by the fact, e.g., that ACE SUSHI'S ingredient labels prominently state that its salmon is "Smoked" and contains "Natural Smoke", mention many other ingredients including "Natural Brown Sugar", but ACE SUSHI'S ingredient labels at the same time misleadingly hide the fact that its tuna and other fish are treated with chemical carbon monoxide gas.)

ACE SUSHI's conduct constitutes fraudulent, malicious, willful, knowing, and/or intentional use of false or misleading description or representation of fact which misrepresents the nature, characteristics, qualities, or geographic origin of goods; unfair competition; unfair or deceptive acts or practices in the conduct of any trade or commerce; deceptive trade practices; fraud; and other wrongful conduct under 15 U.S.C. §1125(a)(1) (which is Section 43(a)(1) of the Lanham

Act), Haw. Rev. Stat. Sections 480-2, 480-13, 481A-3, etc., and the common law.

ACE SUSHI's conduct provided ACE SUSHI with substantial profits to which it was not entitled and caused Plaintiffs to suffer substantial lost sales, damages and other injury and Plaintiffs are reasonably likely to suffer further injury, and are entitled to damages, lost profits from lost sales, treble damages, punitive damages, statutory damages, and/or ACE SUSHI's profits, and injunctive relief.

## II.   JURISDICTION AND VENUE

Jurisdiction and venue are proper, as set forth in the Complaint.

## III.   JURY TRIAL

Plaintiffs have requested a jury trial.

## IV.   DISCLOSURES

At this time, there does not appear to be anything beyond matters covered by the Rule 26(f) report.

## V.   PENDING DISCOVERY AND MOTIONS

No discovery has been initiated. There are no pending discovery matters or motions. A stipulated protective order has been entered and some informal exchange of information has occurred.

## VI. **SPECIAL PROCEDURES**

None requested at this time. The parties will exchange the information required by Rule 26(a)(1). The parties expect to take discovery on the subjects of the pleadings. The parties do not see any need for special limiting or focusing on discovery. The parties do not propose changes to limitations on discovery imposed under the rules, except Plaintiffs would like an increase in the number of interrogatories to 60 to help avoid the need for additional depositions.

## VII. **RELATED COURT CASES**

Plaintiffs have filed numerous other cases in this court, many of which have already been settled (none of the other defendants is affiliated with ACE SUSHI).

## VIII. **ADDITIONAL MATTERS**

Settlement talks have continued, and voluntary exchanges of information have occurred, and the prompt assistance of the court may be helpful.

DATED: Honolulu, Hawaii, May 26, 2006.

CADES SCHUTTE LLP

/s/ Milton M. Yasunaga
MILTON M. YASUNAGA
Attorney for Plaintiffs
WILLIAM R. KOWALSKI and
HAWAII INTERNATIONAL SEAFOODS, INC.